# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| MUTUALFIRST FINANCIAL, INC., WILBUR R. DAVIS, MICHELLE A. ALTOBELLA, MARK L. BARKLEY, JAMES M. BERNARD, LINN A. CRULL, DAVID W. HEETER, BRIAN C. HEWITT, WILLIAM V. HUGHES, RICHARD J. LASHLEY, EDWARD C. LEVY, MICHAEL J. MARIEN, CHARLES J. VIATER, and NORTHWEST BANCSHARES, INC., | ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on October 29, 2019 (the "Proposed Transaction"), pursuant to which MutualFirst Financial, Inc. ("MutualFirst" or the "Company") will be acquired by Northwest Bancshares, Inc. ("Northwest").

2. On October 29, 2019, MutualFirst's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Northwest. Pursuant to the terms of the Merger Agreement, MutualFirst's stockholders will receive 2.4 shares of Northwest for each share of MutualFirst they own.

3. On December 20, 2019, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of MutualFirst common stock.

9. Defendant MutualFirst is a Maryland corporation and a party to the Merger Agreement. MutualFirst's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MFSF."

10. Defendant Wilbur R. Davis is Chairman of the Board of the Company.

11. Defendant Michelle A. Altobella is a director of the Company.

12. Defendant Mark L. Barkley is a director of the Company.

13. Defendant James M. Bernard is a director of the Company.

14. Defendant Linn A. Crull is a director of the Company.

15. Defendant David W. Heeter is Chief Executive Officer, President, and a director of the Company.

16. Defendant Brian C. Hewitt is a director of the Company.

17. Defendant William V. Hughes is a director of the Company.

18. Defendant Richard J. Lashley is a director of the Company.

19. Defendant Edward C. Levy is a director of the Company.

20. Defendant Michael J. Marien is a director of the Company.

21. Defendant Charles J. Viater is Senior Vice President and a director of the Company.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

23. Defendant Northwest is a Maryland corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of MutualFirst (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of October 29, 2019, there were approximately 8,531,491 shares of MutualFirst common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

31. MutualFirst is the holding company of MutualBank, an Indiana-based financial

institution operating since 1889 with assets of $2.1 billion as of September 30, 2019.

32. The Company operates thirty-nine full-service retail financial centers and provides a full range of financial services, including commercial and business banking, personal banking, wealth management, and trust services.

33. On October 29, 2019, MutualFirst's Board caused the Company to enter into the Merger Agreement.

34. Pursuant to the terms of the Merger Agreement, MutualFirst's stockholders will receive 2.4 shares of Northwest common stock for each share of MutualFirst common stock they own.

35. According to the press release announcing the Proposed Transaction:

> Northwest Bancshares, Inc., ("Northwest"), (NASDAQ: NWBI) and MutualFirst Financial, Inc., ("MutualFirst") (NASDAQ: MFSF) jointly announced the signing of a definitive merger agreement pursuant to which Northwest will acquire MutualFirst, the Muncie, Indiana-based holding company and parent of MutualBank, in an all-stock transaction valued at $39.89 per share (based on Northwest's 15-day volume weighted average closing stock price ending on October 23, 2019), or approximately $346 million in the aggregate. . . .
>
> Under the terms of the merger agreement, which has been approved unanimously by the boards of directors of both companies, shareholders of MutualFirst will be entitled to receive 2.4 shares of Northwest common stock for each common share of MutualFirst. The exchange ratio is fixed and the transaction is expected to qualify as a tax-free exchange for shareholders of MutualFirst. Based on Northwest's 15-day volume weighted average closing stock price ending on October 23, 2019, the deal is valued at $346 million, or $39.89 per share, which equates to a price to tangible book value ratio of 172% and a price to earnings ratio, after considering fully phased-in cost savings, of under 10x based on consensus estimates for MutualFirst's 2020 EPS of $2.56 and cost savings of approximately 30%. The tangible book value dilution, including all restructuring costs, of approximately $0.33, or 3.5%, is expected to be earned back in approximately 2.8 years when including the impact of CECL and approximately 2.1 years excluding the impact of CECL.
>
> As part of the merger, one MutualFirst director will be added to Northwest's bank and holding company boards. All of the directors and certain executive officers of MutualFirst have entered into voting agreements with Northwest pursuant to which

they have agreed to vote their shares in favor of the transaction.

The merger is expected to be consummated and converted to Northwest in the second quarter of 2020, after satisfaction of customary closing conditions, including regulatory approvals and the approval of the shareholders of MutualFirst.

When the transaction is completed, the combination of the two banking companies will create a bank with approximately $12.7 billion in total assets and $10.3 billion in deposits, providing banking services through 221 branch locations in four states.

B. Riley FBR, Inc. is serving as financial advisor and Luse Gorman, PC is serving as legal counsel to Northwest in this transaction.

Keefe, Bruyette, & Woods, A Stifel Company is serving as financial adviser and Silver, Freedman, Taff & Tiernan LLP is serving as legal counsel to MutualFirst.

36. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 6.10.1 of the Merger Agreement provides:

> MutualFirst Financial shall not, and shall cause the MutualFirst Financial Subsidiaries and the respective officers, directors, employees, investment bankers, financial advisors, attorneys, accountants, consultants, affiliates and other agents (collectively, the "MutualFirst Financial Representatives") not to, directly or indirectly, (i) initiate, solicit, induce or knowingly encourage, or take any action to facilitate the making of, any inquiry, offer or proposal which constitutes, or could reasonably be expected to lead to, an Acquisition Proposal; (ii) participate in any discussions or negotiations regarding any Acquisition Proposal or furnish, or otherwise afford access, to any Person (other than Northwest Bancshares) any information or data with respect to MutualFirst Financial or any of the MutualFirst Financial Subsidiaries or otherwise relating to an Acquisition Proposal; (iii) release any Person from, waive any provisions of, or fail to enforce any confidentiality agreement or standstill agreement to which MutualFirst Financial is a party; or (iv) enter into any agreement, agreement in principle or letter of intent with respect to any Acquisition Proposal or approve or resolve to approve any Acquisition Proposal or any agreement, agreement in principle or letter of intent relating to an Acquisition Proposal. Any violation of the foregoing restrictions by MutualFirst Financial or any MutualFirst Financial Representative, whether or not such Representative is so authorized and whether or not such MutualFirst Financial Representative is purporting to act on behalf of MutualFirst Financial or otherwise, shall be deemed to be a breach of this Agreement by MutualFirst Financial. MutualFirst Financial and MutualFirst Financial Subsidiaries shall, and

shall cause each of the MutualFirst Financial Representatives to, immediately cease and cause to be terminated any and all existing discussions, negotiations, and communications with any Persons with respect to any existing or potential Acquisition Proposal.

37. Additionally, the Company must promptly advise Northwest of any proposals or inquiries received from other parties. Section 6.10.3 of the Merger Agreement provides:

> MutualFirst Financial shall promptly (and in any event within twenty-four (24) hours) notify Northwest Bancshares in writing if any proposals or offers are received by, any information is requested from, or any negotiations or discussions are sought to be initiated or continued with, MutualFirst Financial or any MutualFirst Financial Representatives, in each case in connection with any Acquisition Proposal, and such notice shall indicate the name of the Person initiating such discussions or negotiations or making such proposal, offer or information request and the material terms and conditions of any proposals or offers (and, in the case of written materials relating to such proposal, offer, information request, negotiations or discussion, providing copies of such materials (including e-mails or other electronic communications). MutualFirst Financial agrees that it shall keep Northwest Bancshares informed, on a current basis, of the status and terms of any such proposal, offer, information request, negotiations or discussions (including any amendments or modifications to such proposal, offer or request).

38. Moreover, the Merger Agreement contains a restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Northwest a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.10.5 of the Merger Agreement provides:

> Notwithstanding Section 6.10.4, at any time prior to the approval of the Merger at the MutualFirst Financial Stockholders Meeting, the MutualFirst Financial Board of Directors may approve or recommend to the stockholders of MutualFirst Financial a Superior Proposal, withdraw, qualify or modify the MutualFirst Financial Recommendation in connection therewith (a "MutualFirst Financial Subsequent Determination") and/or adjourn or postpone the MutualFirst Financial Stockholders Meeting after the third (3rd) Business Day following Northwest Bancshares' receipt of a notice (the "Notice of Superior Proposal"), from MutualFirst Financial advising Northwest Bancshares that the MutualFirst Financial Board of Directors has decided that a bona fide unsolicited written Acquisition Proposal that it received (that did not result from a breach of this Section 6.10) constitutes a Superior Proposal (it being understood that MutualFirst Financial shall be required to deliver a new Notice of Superior Proposal in respect of any revised Superior Proposal from such third party or its affiliates that

MutualFirst Financial proposes to accept and the subsequent notice period shall be two (2) business days) if, but only if, (i) the MutualFirst Financial Board of Directors has reasonably determined in good faith, after consultation with and having considered the advice of outside legal counsel and a financial advisor (as to financial matters), that the failure to take such actions would more likely than not violate its fiduciary duties to MutualFirst Financial's stockholders under applicable law, and (ii) at the end of such three (3) Business Day period or the two (2) Business Day Period (as the case may be), after taking into account any such adjusted, modified or amended terms as may have been committed to in writing by Northwest Bancshares since its receipt of such Notice of Superior Proposal (provided, however, that Northwest Bancshares shall not have any obligation to propose any adjustments, modifications or amendments to the terms and conditions of this Agreement), the MutualFirst Financial Board of Directors has again in good faith made the determination (A) in clause (i) of this Section 6.10.5, and (B) that such Acquisition Proposal constitutes a Superior Proposal. Notwithstanding the foregoing, the changing, qualifying or modifying of the MutualFirst Financial Recommendation or the making of a MutualFirst Financial Subsequent Determination by the MutualFirst Financial Board of Directors shall not change the approval of the MutualFirst Financial Board of Directors for purposes of causing any applicable "moratorium," "control share," "fair price," "takeover," "interested stockholder" or similar law to be inapplicable to this Agreement and the MutualFirst Financial Voting Agreements and the transactions contemplated hereby and thereby, including the Merger.

39. The Merger Agreement also provides for a "termination fee" of $11 million payable by MutualFirst to Northwest if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Registration Statement Omits Material Information***

40. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

41. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

42. First, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction,

Keefe, Bruyette & Woods, Inc. ("KBW").

43. With respect to KBW's MutualFirst Financial Selected Companies Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

44. With respect to KBW's Northwest Bancshares Selected Companies Analysis – Regional Peers, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

45. With respect to KBW's Northwest Bancshares Selected Companies Analysis – Regional Peers, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis.

46. With respect to KBW's Selected Transactions Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by KBW in the analysis.

47. With respect to KBW's Financial Impact Analysis, the Registration Statement fails to disclose: (i) the closing balance sheet estimates as of March 31, 2020 for Northwest and MutualFirst; (ii) the pro forma assumptions, including the cost savings and related expenses expected to result from the Proposed Transaction and accounting adjustments and restructuring charges assumed with respect thereto, provided by Northwest management; (iii) the extent to which the Proposed Transaction could be accretive to Northwest's estimated 2020 EPS and estimated 2021 EPS; and (iv) the extent to which the Proposed Transaction could be dilutive to Northwest's estimated tangible book value per share as of March 31, 2020.

48. With respect to KBW's MutualFirst Financial Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the

discount rates ranging from 8.0% to 12.0%; (ii) the estimated excess cash flows that MutualFirst could generate over the period from March 31, 2020 through December 31, 2024 as a standalone company and all underlying line items; (iii) MutualFirst's terminal value; and (iv) KBW's basis for applying a range of 10.0x to 14.0x MutualFirst's estimated 2025 earnings.

49. With respect to KBW's Northwest Bancshares Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 7.0% to 11.0%; (ii) the estimated excess cash flows that Northwest could generate over the period from March 31, 2020 through December 31, 2024 as a standalone company and all underlying line items; (iii) Northwest's terminal value; and (iv) KBW's basis for applying a range of 12.0x to 16.0x Northwest's estimated 2025 earnings.

50. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51. Second, the Registration Statement omits material information regarding potential conflicts of interest of KBW.

52. The Registration Statement fails to disclose the amount of compensation KBW received for acting "as financial advisor to MutualFirst Financial in connection with its February 2018 acquisition of Universal Bancorp."

53. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54. Third, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and

directors, including who participated in all such communications.

55.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

56.  The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) MutualFirst Financial's Reasons for the Merger; Recommendation of MutualFirst Financial's Board of Directors; (iii) Opinion of MutualFirst Financial's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

57.  The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and MutualFirst

58.  Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.  The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. MutualFirst is liable as the issuer of these statements.

60.  The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants

were aware of this information and their duty to disclose this information in the Registration Statement.

61. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

62. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

63. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

64. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

65. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Northwest

66. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67. The Individual Defendants and Northwest acted as controlling persons of MutualFirst within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of MutualFirst and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

68. Each of the Individual Defendants and Northwest was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

70. Northwest also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

71. By virtue of the foregoing, the Individual Defendants and Northwest violated Section 20(a) of the 1934 Act.

72. As set forth above, the Individual Defendants and Northwest had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened

with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 3, 2020            **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
    Brian D. Long (#4347)

**OF COUNSEL:**                    Gina M. Serra (#5387)
    300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**                     Wilmington, DE 19801
Richard A. Maniskas             Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300    Facsimile: (302) 654-7530
Berwyn, PA 19312               Email: bdl@rl-legal.com
Telephone: (484) 324-6800        Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com          *Attorneys for Plaintiff*